UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

COREY CROMWELL,

        Plaintiff,

  v.                                                                                              20-CV-317-LJV
                                                                                                           ORDER
JERRY HENDEL, *Correction Officer,
Employed at Attica Correctional Facility*,
*et al.*,

        Defendants.
_____

      The *pro se* plaintiff, Corey Cromwell, is a prisoner confined at the Clinton Correctional Facility.  He asserts claims under 42 U.S.C. § 1983 and New York State law, alleging that the defendants—Jerry Hendel, Steven Wagner, and "Superintendent Noeth"—violated his First, Fourth, Eighth, and Fourteenth Amendment rights when Cromwell was confined at the Attica Correctional Facility ("Attica").  Docket Items 1, 12, 24.

      This Court previously screened Cromwell's complaint and found that his First, Fourth, and Eighth Amendment claims against Hendel and Wagner could proceed.  Docket Item 10.  But in that screening order, this Court determined that Cromwell had not stated viable claims against Noeth because Cromwell had not alleged that Noeth was personally involved in any unconstitutional conduct.  *Id*.  And after Cromwell filed an amended complaint that did not name Noeth as a defendant, this Court screened the amended complaint, deemed any claims against Noeth to be abandoned, and dismissed Noeth as a defendant.  Docket Item 15.

Cromwell subsequently moved for reconsideration of that order and asked to file another amended complaint renewing his claims against Noeth. Docket Item 17. This Court granted that motion and gave Cromwell leave to "file an amended complaint to reassert any claims against Noeth." Docket Item 19 at 4. Cromwell then filed a second amended complaint. Docket Item 24.

This Court now screens Cromwell's claims against Noeth in his second amended complaint. For the reasons that follow, Cromwell's claims against Noeth are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

## **DISCUSSION**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it

---

[1] In his second amended complaint, Cromwell raises the same claims against Hendel and Wagner that this Court deemed sufficient in its prior screening orders. *See* Docket Items 10, 15. For the reasons stated in those orders, Cromwell's claims against those defendants remain, and this Court has ordered those defendants to respond. *See* Docket Item 15; *see also infra* at 15.

might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))). But leave to amend pleadings may be denied when any amendment would be "futile." *Cuoco*, 222 F.3d at 112.

**I.     SCREENING THE COMPLAINT**

In evaluating a complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after Twombly, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

As noted in this Court's prior screening orders, Cromwell has sued Hendel and Wagner, two Attica correction officers, and Noeth, the Attica Superintendent. *See*

Docket Items 10, 15, 24.  A liberal reading of the second amended complaint, Docket Item 24, tells the following story.[2]

During an Attica prison visit between Cromwell and his fiancée[3] on October 7, 2018, Hendel, the officer "assigned to [Attica's] visiting room, . . . constantly and clearly harass[ed] [Cromwell] and his [fiancée]." *Id.* at 4.  In one instance, Hendel insulted Cromwell's fiancée for "choos[ing] to be with" Cromwell; Hendel remarked that this decision "sure sa[id] a lot about [her]." *Id.*  In another instance, Hendel suggested that Cromwell's fiancée "dropped out of high school and [did not] know how to read." *Id.*

Because of the "constant harassment" by Hendel, Cromwell filed an administrative grievance against Hendel; likewise, Cromwell's fiancée "filed a civilian complaint with her personal lawyer, as well as [] an online complaint" with the "Albany Office for Civilian Complaint[s]." *Id.*  Cromwell's fiancée also "wrote/filed a complaint to Superintendent Noeth." *Id.*  Despite those multiple grievances, "[n]othing was ever done about these complaints." *Id.*

About a month later, Cromwell's fiancée again visited Attica.  *Id.* at 5.  Hendel, again "assigned to the facility's visiting room," accused Cromwell and his fiancée of "smuggl[ing] some unknown contraband into [Attica]." *Id.*  Cromwell says that this accusation was made "in retaliation [for Cromwell's] and his [fiancée's] fil[ing] the grievances and complaints against [Hendel]." *Id.*

---

[2] Because this screening order deals only with Cromwell's claims against Noeth, the Court sets forth a brief recitation of only the facts most relevant to those claims.

[3] At some point, Cromwell and his fiancée ended their relationship.  *See* Docket Item 24 at 9.  Because the events giving rise to Cromwell's claims occurred when Cromwell and his fiancée were engaged, this Court refers to Cromwell's ex-fiancée as his fiancée in this order.

4

As a result of this accusation, Cromwell was taken into Attica's "Inmate Visitors Search Area, where he was thoroughly strip[] searched for the alleged 'contraband.'" *Id.* "No contraband was found," but Cromwell nevertheless was "escorted to [Attica's] Special Watch Room." *Id.* Once Cromwell was in the Special Watch Room, he was ordered to "remove all of his clothing and to put on a thin hospital smock to wear." *Id.*

Cromwell was forced to remain in the "unbearabl[y] frig[id]" Special Watch Room "for a number of days." *Id.* All the while, he wore only the thin hospital smock and slept on "an unsanitary bare mattress." *Id.* Cromwell, who has various medical ailments and "can't stand [the] cold due to joint pains," was in "physical, mental[,] and emotional pain and anguish" in the Special Watch Room. *Id.*

While he was in the Special Watch Room, Cromwell had to provide "five [] samples of fece[s] to" Wagner for contraband testing. *Id.* at 6. Although Cromwell should have had to provide only "the normal required amount of three [] samples," Wagner "abus[ed] his authority and . . . humiliate[d] and degrade[d] [Cromwell]" by "claim[ing] that the [third] sample of fece[s] 'wasn't enough' defecation." *Id.* After no contraband was recovered, Cromwell was released back to his cell on November 7, 2018. *Id.* at 6-7.

The next day, two officers "appeared in front of [Cromwell's] cell and ordered him to put some shoes on and get dressed." *Id.* at 7. Cromwell then was taken to the Special Housing Unit ("SHU"). *Id.* at 7-8. According to Cromwell, he was placed in the SHU because of a false misbehavior report. *Id.* at 7, 21. Cromwell remained in the SHU for nineteen days before he was "unexpectedly released . . . without having appeared before a hearing officer" to contest the misbehavior report. *Id.* at 7-8.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). It is not enough to assert that the defendant is a "link[] in the prison['s] chain of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

### A. Official-Capacity Claims

In its second screening order, this Court dismissed Cromwell's official-capacity claims without leave to amend. Docket Item 15 at 6-7. That is because the Eleventh Amendment bars suits for money damages against New York State and its officials in their official capacity. *See id.* at 6.

6

In his second amended complaint, Cromwell again brings claims against each defendant "in their individual and official capacit[ies] if determined by this Court [sic]." Docket Item 24 at 2. But for the reasons stated in this Court's prior order, *see* Docket Item 15 at 6-7, the Eleventh Amendment bars Cromwell's official-capacity claims for money damages. Those claims therefore are dismissed.

### B.     Procedural Due Process Claim

This Court previously dismissed Cromwell's procedural due process claim because Cromwell had not sufficiently alleged that he was deprived of a liberty interest entitled to protection. Docket Item 15 at 10-12. In his second amended complaint, Cromwell again asserts that Noeth committed "egregious due process violations." Docket Item 24 at 9.

To raise a viable procedural due process claim, a plaintiff first must show a liberty interest entitled to protection. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). And to show "the existence of a protected liberty interest," a prisoner must establish (1) "that the confinement or restraint complained of creates an 'atypical and significant hardship in relation to the ordinary incidents of prison life'"; and (2) "that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint.'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations omitted) (first quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995); then quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)). In determining whether the challenged confinement or restraint is an atypical and significant hardship, courts consider both the duration and conditions of confinement, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a

prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)).  So a prisoner who challenges a relatively short SHU confinement, without any "indication that [he or she] endured unusual SHU conditions," cannot state a viable due process claim.  *See id.* at 65-66 (noting that the Second Circuit has "affirmed dismissal of due process claims" where the "period of time spent in [the] SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [the] SHU—and there was no indication that the plaintiff endured unusual SHU conditions").

In his second amended complaint, Cromwell again says that Noeth violated Cromwell's due process rights because Noeth "was [] responsible for [Cromwell's] wrongful confinement in [the SHU]."[4]  Docket Item 24 at 9.  But for the reasons stated in this Court's prior screening order, Cromwell's nineteen-day confinement in the SHU, standing alone, is not an atypical and significant hardship.  *See* Docket Item 15 at 10-12.  And Cromwell has not included any allegations in his second amended complaint suggesting how his SHU confinement was "especially harsh."  *See* Docket Item 10 at 14; Docket Item 15 at 10.  Because Cromwell has been given multiple opportunities to state a viable due process claim but still has not done so, his claim against Noeth is dismissed without further leave to amend.

C.   **Eighth Amendment Claim**

Cromwell also says that his nineteen-day confinement in the SHU violated his Eighth Amendment rights.  Docket Item 24 at 9.  "In order to establish an Eighth

---

[4] Cromwell's procedural due process claim against Noeth relates only to Cromwell's SHU confinement.  *See* Docket Item 24 at 10.

Amendment violation, an inmate must show '(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official.'" *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). "Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978)). And "[w]hether incarceration in the SHU violates the Eighth Amendment[] . . . depends on the duration and conditions of the confinement." *Id.*

Cromwell has not stated a viable Eighth Amendment claim based on his SHU confinement. As noted above, Cromwell says only that he was confined in the SHU for nineteen days; he does not allege that he endured any unusual conditions of confinement while in the SHU. And other courts have dismissed Eighth Amendment claims based on far longer periods of SHU confinement. *See Jay v. Venetozzi*, 2020 WL 4382001, at *9 (W.D.N.Y. July 30, 2020) (collecting cases dismissing Eighth Amendment claims challenging SHU sentences of seven months, twelve months, and four years). Because further leave to amend this claim would be "futile," *see Cuoco*, 222 F.3d at 112, Cromwell's Eighth Amendment claim against Noeth based on Cromwell's SHU confinement is dismissed without leave to amend.

### D.     Equal Protection Claim

This Court previously dismissed Cromwell's equal protection claim because he had not included "specific factual allegations that [any defendant] discriminated against him on the basis of race." Docket Item 15 at 10. In his second amended complaint,

9

Cromwell again says that the defendants "deprive[d] him of his basi[c] and fundamental constitutional right[] to . . . equal protection of the law." Docket Item 24 at 3, 10. But Cromwell again has not included any allegations that could give rise to an equal protection claim. For the reasons stated in this Court's prior order, see Docket Item 15, Cromwell's equal protection claim is dismissed.

### E.     Claims Related to Cromwell's Grievances

Cromwell also suggests that Noeth may be liable to him because Noeth failed to adequately respond to his complaints. See, e.g., Docket Item 24 at 8 (alleging that Noeth "is responsible for investigating, answering[,] and resolving inmate complaints"). But "[i]t is well[ ]established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Franks v. Eckert*, 2020 WL 4194137, at *7 (W.D.N.Y. July 21, 2020) (quoting *Brown v. Montone*, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018)). In other words, "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement" in that constitutional violation. *Id.* (quoting *Withrow v. Goord*, 374 F. Supp. 2d 326, 329 (W.D.N.Y. 2005)). To the extent that Cromwell alleges that Noeth violated Cromwell's constitutional rights by failing to adequately respond to his complaints, those claims are dismissed without leave to amend.[5]  See *Cuoco*, 222 F.3d at 112.

---

[5] For similar reasons, Cromwell has not alleged a viable claim related to Noeth's "failure to act, address, warn[,] or discipline" Hendel for Hendel's retaliatory actions. Docket Item 24 at 8-9.  Under *Tangreti*, a supervisory official can be held liable only if that defendant, "through [his or her] own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  So Cromwell's allegation that Noeth failed to adequately respond to another officer's alleged retaliation fails to allege a viable retaliation claim against Noeth.  See *Fabrizio v.*

### F. Retaliation Claim

Cromwell also suggests that Noeth retaliated against Cromwell by "terminating [his] visit[ing] privileges with his fiancée." Docket Item 24 at 8. To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam))).

To prove the final prong, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff may rely on circumstantial evidence to prove causation. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, [a] finding of not guilty at the disciplinary

---

*Smith*, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (dismissing retaliation claim where the plaintiff alleged that the defendants "failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals"), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021).

11

hearing, and statements by defendants as to their motives." *Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).

"[B]ecause of the 'ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care.'" *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order) (quoting *Colon*, 58 F.3d at 872). And "[b]ecause of the potential for abuse, '[courts] insist[] on a higher level of detail in the pleadings.'" *Id.* (alterations omitted) (quoting *Gill*, 824 F.2d at 194). In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case [and] ought usually to be pursued with full discovery;" (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[, and] will support at least documentary discovery;" [or] (3) "a complaint which alleges retaliation in wholly conclusory terms [and] may safely be dismissed on the pleadings alone.

*Id.* (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Liberally construed, Cromwell's second amended complaint alleges that Noeth retaliated against Cromwell by suspending Cromwell's visiting privileges with his fiancée because of his complaints and grievances about other Attica correction officers. *See* Docket Item 24 at 8-9. But Cromwell has not alleged any facts that would show a plausible causal connection between Cromwell's grievances about other officers and Noeth's decision.[6] *See Quick v. Minale*, 2016 WL 6124495, at *7 (N.D.N.Y. Oct. 20,

---

[6] The only apparent basis to infer a causal connection between Cromwell's grievances and any decision by Noeth is the temporal proximity between the two. The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Espinal*, 558 F.3d at 129 (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). Instead, courts are "to exercise [their] judgment about the permissible

2016) (dismissing retaliation claim after finding that the "alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient").  In fact, the filings that Cromwell included with his second amended complaint suggest that Noeth did not retaliate against him; on the contrary, Noeth apparently investigated Cromwell's complaints and then reinstated his visiting privileges.  *See* Docket Item 24 at 33 (letter from Cromwell to Noeth "thank[ing] [Noeth]" for "reinstating [Cromwell's] visiting privileges with [his] fiancée," as well as "investigating that incident [and] being fair about the situation").  So Cromwell has not plausibly alleged a "retaliation claim supported by specific and detailed factual allegations" or pleaded facts "giving rise to a colorable suspicion of retaliation." *Johnson*, 8 F. App'x at 144 (quoting *Flaherty*, 713 F.2d at 13)).

In light of all that, Cromwell has not sufficiently alleged that Noeth retaliated against him.[7]  Because any further amendment of that claim would be "futile," *see Cuoco*, 222 F.3d at 112, leave to amend is denied.

---

inferences that can be drawn from temporal proximity in the context of particular cases." *Id.*  Given the materials included with Cromwell's second amended complaint, Cromwell has not plausibly alleged a causal connection between his grievances and Noeth's actions.

[7] To the extent that Cromwell alleges that the temporary suspension of his visiting privileges itself violated his constitutional rights, any such claim is dismissed.  "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).  And Cromwell's visiting privileges with his fiancée were suspended for only a short period.  *See* Docket Item 24 at 45 (noting that Cromwell's "visits were taken for 2 weeks").  That falls well short of an "atypical and significant" hardship that would be protected under the Due Process Clause.  *See Mills v. Fischer*, 497 F. App'x 114, 117 (2d Cir. 2012) (summary order) ("Denying an inmate a single visit with his son does not constitute an atypical and significant hardship."); *see also Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 228 (W.D.N.Y. 2003) (concluding that the "roughly three-year

### G. State Constitutional Claims

Finally, Cromwell brings a claim against Noeth under the New York State Constitution. *See* Docket Item 24 at 10. "The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under [section] 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (summary order). And "[s]ection 1983 need not provide the exact same standard of relief in order to provide an adequate remedy." *Wahad v. F.B.I.*, 994 F. Supp. 237, 240 n.4 (S.D.N.Y. 1998). Because Cromwell has brought claims for alleged violations of the United States Constitution under section 1983, this Court declines to recognize a cause of action under the New York State Constitution to reach the same conduct.

In any event, Cromwell cannot bring a state constitutional claim against Noeth in this Court. "The Second Circuit has long[ ]held that [New York State] Correction Law § 24 precludes a plaintiff from raising state law claims in federal court against state officers in their personal capacities for alleged actions arising within the scope of their employment." *Grubbs v. Ngbodi*, 2022 WL 4072926, at *10 (S.D.N.Y. Sept. 2, 2022). And the "New York Court of Appeals has instructed that an employee will be considered within the scope of his employment so long as he is discharging his duties, no matter how irregularly[] or with what disregard of instructions." *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) (citation and internal quotation marks omitted). Because the conduct that Cromwell says violated state law occurred while Noeth was discharging his duties as Superintendent, Cromwell's claim under the New York State

---

suspension of [the plaintiff's] visitation rights did not violate [his] constitutional rights" where the plaintiff could still communicate with others by letter and telephone).

14

Constitution is barred by section 24. *See id.* (concluding that section 24 bars claims asserted under the New York State Constitution in federal court).

For those reasons, Cromwell cannot assert a claim directly under the New York State Constitution against Noeth. That claim is dismissed without further leave to amend. *See Cuoco*, 222 F.3d at 112.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that Cromwell's claims against "Superintendent Noeth" are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and the Clerk of the Court shall terminate Noeth as a defendant to this case; and it is further

ORDERED that Hendel and Wagner shall answer the complaint or respond under 42 U.S.C. § 1997e(g); and it is further

ORDERED that Cromwell shall notify the Court in writing if his address changes. The Court may dismiss the action if Cromwell fails to do so.

SO ORDERED.

Dated:	October 28, 2022
	Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE