UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COREY CROMWELL,

        Plaintiff,

    v.                                                                                20-CV-317-LJV
                                                                                                DECISION & ORDER
JERRY HENDEL and STEVEN
WAGNER,

        Defendants.

---

      Before the Court is a motion for summary judgment filed by the defendants, Jerry Hendel and Steven Wagner, former corrections officers at the Attica Correctional Facility ("Attica").  Docket Item 53; *see* Docket Item 53-1 at ¶¶ 3, 5.  Among other things, the defendants argue that they are entitled to summary judgment because the plaintiff, Corey Cromwell, failed to exhaust his administrative remedies.  *See* Docket Item 53-8 at 5-7.[1]  After Cromwell responded to the motion, Docket Item 67, the defendants replied, Docket Item 68.

      For the reasons that follow, this Court agrees with the defendants that Cromwell has not exhausted his administrative remedies.  The defendants' motion for summary judgment therefore is granted.

---

[1] Page numbers in docket citations refer to ECF pagination.

## **LEGAL PRINCIPLES**

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id*. (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)). Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id*. "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id*.

## **BACKGROUND**[2]

Cromwell is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Docket Item 53-1 at ¶ 1. At the time of the events that led to this lawsuit, Cromwell was housed at Attica, where Hendel and Wagner worked as corrections officers. *Id.* at ¶¶ 2-6.

---

[2] On a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The following facts are taken from the defendants' statement of undisputed facts, Docket Item 53-1, with all inferences drawn in Cromwell's favor.

Cromwell's claims stem from the defendants' response to visits he had with a friend, Kailee Phillips. *Id.* at ¶¶ 8-26. Cromwell claims that the problems began on October 4, 2018, when Hendel "harassed" Phillips during her visit with Cromwell. *Id.* at ¶ 9. Cromwell filed an inmate grievance based on that alleged harassment. *Id.* at ¶ 11.

When Phillips returned a month later, Hendel accused Phillips of smuggling contraband to Cromwell. *Id.* at ¶ 12. As a result, Cromwell was taken from the visit room, strip frisked, and then taken to a "Special Watch" for contraband in the Attica infirmary. *Id.* According to Cromwell, Hendel made this false accusation in retaliation for the grievance Cromwell had filed against Hendel. *Id.* at ¶ 13.

Wagner was initially placed in charge of observing Cromwell during the Special Watch. *Id.* at ¶ 15. According to DOCCS Directive 4910, "an inmate must provide two negative defecations to be cleared from a Special Watch." *Id.* at ¶ 20. But according to Cromwell, he was forced to defecate five times before he was cleared. *See id.* at ¶ 28.

As a result, Cromwell filed two more grievances. *Id.* at ¶ 27. The first accused Hendel of harassing Phillips and falsely accusing Cromwell of smuggling contraband, resulting in Cromwell's being placed on Special Watch. *Id.* Cromwell appealed the denial of this grievance to the superintendent, who affirmed the grievance. *Id.* But Cromwell did not appeal to DOCCS's Central Office Review Committee ("CORC"). *See id.*

The second grievance claimed that the Special Watch officers failed to follow policy when they made Cromwell defecate five times. *Id.* at ¶ 28. Cromwell did not appeal the denial of this grievance to the superintendent or the CORC. *Id.*

**DISCUSSION**

"The Prison Litigation Reform Act ('PLRA') provides that '[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Engles v. Jones*, 2018 WL 6832085, at *9 (W.D.N.Y. Dec. 28, 2018) (quoting 42 U.S.C. § 1997e). This "exhaustion requirement applies to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Id.* (quoting *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002)).

In New York, prisoners "ordinarily follow a three-step . . . grievance process" to satisfy the PLRA's exhaustion requirement. *Id.* (quoting *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010)). First, the inmate must file "a grievance with the Inmate Grievance Resolution Committee ['IGRC']. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the [CORC]." *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236). In general, a prisoner must complete "all three levels of review" before "seek[ing] relief in federal court under [section] 1983." *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236).

That being said, there is an exception to the exhaustion requirement if "an administrative remedy is 'unavailable.'" *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)). The Supreme Court has held that this exception applies: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to

4

aggrieved inmates"; (2) when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

"[F]ailure to exhaust is an affirmative defense," and, therefore, the defendant bears the burden of proof. *Engles*, 2018 WL 6832085, at *9 (quoting *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 580 (S.D.N.Y. 2015)). "[O]nce a defendant demonstrates that the plaintiff has not exhausted his administrative remedies," however, "'the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions' to the exhaustion requirement." *Id.* (quoting *Perry v. Rupert*, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013)); *see also Hubbs*, 788 F.3d at 59 ("If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact.").

Here, Cromwell filed two grievances related to the underlying facts of his action. *See* Docket Item 53-8 at 7. But, the defendants say, Cromwell appealed only one of them to the superintendent and failed to appeal either grievance to the CORC. *See id.*

Cromwell says that he "believes that he ha[d] in fact exhausted all his administrative remedies to the best of his knowledge at that time." Docket Item 67 at 3. More specifically, he contends that "[u]nder [DOCCS] policy and procedures, any written

grievance/complaint that an incarcerated individual makes against a prison official, for instance, a Correction Officer[], . . . does not go through the normal grievance procedure as other grievances, where the incarcerated individual has to appeal to the [s]uperintendent and [the CORC]." *Id.* He adds that "[t]he reality is[] that it's a major conflict of interest filing [g]rievances and complaints to the [s]uperintendent." *Id.* at 4 (capitalization and underline omitted).

At the same time, Cromwell admits that he cannot "recall if he filed an appeal to [the CORC]." *Id.* But he notes that "most grievances against prison officials take[] longer than the . . . [IGRC] process." *Id.* Ultimately, he "ask[s] this Court not to dismiss this claim on a minute error, as there was a lot going on during this time." *Id.* at 5.

Although this Court has sympathy for Cromwell and his situation, the PLRA requires inmates to exhaust their administrative remedies before coming to federal court. *See* 42 U.S.C. § 1997e. Cromwell "implicitly concedes that [his] claims were not exhausted." *See Mack v. Artuz*, 2002 WL 31845087, at *4 (S.D.N.Y. Dec. 19, 2002). And he has not met his burden to demonstrate that his failure to exhaust fell into one of the exceptions.

First, there is no support for Cromwell's assertion that claims against corrections officers do not need to go through the standard grievance process. *See* Docket Item, 67 at 3. On the contrary, "New York permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Mack*, 2002 WL 31845087, at *4 (quoting *Flanagan v. Maly*, 2002 WL 122921, at *1 (S.D.N.Y. Jan. 29, 2002)). Nor does the timing of the IGRC process relieve him of his obligation to appeal. *See id.* at *5 (finding that plaintiff failed to exhaust because even "accepting [his] allegations that the

6

IGRC failed to act on his complaint [promptly], he could have appealed his grievances to the superintendent and finally to the CORC").  Harsh as is it is, the PLRA requires that "[a]ll 'available' remedies must . . . be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Id.* (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  And this Court has no choice but to follow the PLRA's requirements.

For all those reasons, this Court finds that Cromwell has failed to exhaust his administrative remedies and grants the defendants' motion for summary judgment on that basis.[3]

## **CONCLUSION**

For all those reasons, the defendants' motion for summary judgment, Docket Item 53, is GRANTED.  The Clerk of Court shall close this case.

SO ORDERED.

Dated:   March 14, 2025
         Buffalo, New York

                                                    /s/ Lawrence J. Vilardo
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE

---

[3] In his opposition, Cromwell also ask for additional discovery on his underlying claims.  *See* Docket Item 67 at 17-18.  The defendants argue that Cromwell "had roughly seven months to seek . . . the discovery that he is now asking the Court to order DOCCS . . . to produce."  Docket Item 68 at 2.  "In light of [Cromwell]'s lack of diligence in pursuing discovery during the discovery period set by the Court," the defendants say, "the Court should reject his request to reopen discovery at this juncture."  *Id.*

Ultimately, the Court need not reach the merits of Cromwell's belated discovery request.  Because this Court finds that Cromwell has failed to exhaust, it denies his request for discovery as moot.

7